UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION


R-DEVIE, INC., and JACQUELINE MITCHELL,
individually and on behalf of all others similarly
situated,

       Plaintiffs,                                CASE NO.: 6:19-cv-1050-Orl-78LRH

vs.

THE TRAVELERS COMPANIES INC.; TRAVELERS
INDEMNITY COMPANY OF CONNECTICUT;
THE STANDARD FIRE INSURANCE COMPANY;
TRAVELERS PROPERTY CASUALTY INSURANCE
COMPANY; THE TRAVELERS INDEMNITY COMPANY;
PHOENIX INSURANCE COMPANY; CHARTER
OAK FIRE INSURANCE COMPANY; TRAVELERS
PROPERTY CASUALTY COMPANY OF AMERICA; THE
TRAVELERS INDEMNITY COMPANY OF AMERICA; and
TRAVELERS CASUALTY INSURANCE COMPANY
OF AMERICA,

       Defendants.
_____/


## PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS (DOC. 18)

Plaintiffs file this Response in Opposition to Defendants' Motion to Dismiss the Amended Complaint (Doc. 18, "Motion"), and state in support the following:

## I.   <u>INTRODUCTION</u>

Defendants ("Travelers") issued materially identical policies of insurance to Plaintiffs and all class members, promising to pay them the actual cash value ("ACV") of their insured vehicle in the event of a total loss. Under black-letter Florida law, a property's ACV is measured by the amount it would cost to replace the property, with the limiting principle that the costs must be reasonably likely to be incurred in replacing the property. Plaintiffs allege Plaintiffs allege that title transfer fees and registration transfer fees are not merely reasonably likely, but are necessary and unavoidable, and should be included in the ACV payments issued to insureds who suffer a total loss to their insured vehicles.

Defendants apparently agree. Defendants claim they have changed their business practices and now properly include title transfer fees and registration transfer fees, as promised by their Policies. If true, Defendants are to be commended for abiding by their contractual promises. Defendants also claim to have remediated Plaintiffs' and the putative class members' claims, including the proper amounts for prejudgment interest. If true, then, again, Defendants have done the right thing. However, Defendants' claim that such payments moot this case and render the claims subject to dismissal under Rule 12 are simply incorrect. If anything, such payments would entitle Plaintiffs to entry of judgment. Plaintiffs are confident that, if the assertions Defendants made are correct, the Parties ostensibly possess the same goals and can expeditiously resolve the case.[1] In any event, Plaintiffs' claims, under clear precedent, are unquestionably not moot.

---

[1] Plaintiffs previously requested an extension of the deadline to file this Opposition in hopes of resolving the matter without requiring judicial resolution of the Motion to Dismiss. While Plaintiffs believe that the Parties are very close to resolving the issue, some time is still necessary,

Surprisingly, given Defendants' confession that title fees and registration fees are owed under the Policies and claim to have changed their business practices to comport with their Policy promises, Defendants also seek to *dismiss the case on the merits*, arguing that the Policy does not provide the very coverage Defendants claim to now provide. In any event, Defendants' position in reality, reflected in their purported change in business practice, is correct, and Defendants' contradictory position for the purposes of briefing before this Court is incorrect; ACV is an unambiguous term, and it provides coverage for replacement costs such as title and registration transfer fees. At the very least, whether title and registration transfer fees are reasonably likely to be incurred is a question of fact inappropriate for resolution at this stage of the pleadings. Respectfully, Defendants' Motion should be denied.[2]

## II.   FACTUAL BACKGROUND

The allegations here are simple. Plaintiffs respectively allege they were insured under materially identical policies issued by, respectively, Defendants Travelers Indemnity Company of Connecticut and Standard Fire Insurance Company. Doc. 1 (Compl.) at ¶¶ 16-18. The Policies promised to pay for loss with a limit of liability of actual cash value, or ACV. *Id*. at ¶ 19. Because title and registration transfer fees are necessary and unavoidable, imposed by the State of Florida on every vehicle purchase, they are reasonably likely to be incurred in replacing the vehicle. Id. at ¶¶ 36-53. Despite its policy language promising to pay ACV – which means the replacement cost

---

and thus Plaintiffs file this Opposition in an abundance of caution. Plaintiffs nevertheless still expect that the Parties will be able to resolve the issue, and will update the Court shortly.

[2] While Plaintiffs believe Florida and federal law permit them to press claims against all Defendants, given Defendants' assertions and the recent developments, Plaintiffs do not contest dismissal of entities other than Travelers Indemnity Company of Connecticut and Standard Fire Insurance Company.

of the insured vehicle, minus depreciation – Defendants, as a uniform business practice, do not pay these mandatory transfer fee amounts in making ACV payments. *Id*. at ¶¶ 36-43.

Specifically, Plaintiffs respectively allege they were involved in a motor vehicle accident, after which Defendants determined their loss to constitute a complete or total loss. *Id*. at ¶¶ 22-25, 29-32. In making the total-loss payments, Defendants failed to include title and registration transfer fee amounts, pursuant to its aforementioned uniform business practice. Id. at ¶¶ 28, 35. Thus, Plaintiffs brought this case against Defendants, individually and on behalf of all other similarly-situated insureds.

### III.     LEGAL STANDARD

When considering a Rule 12(b)(6) motion, the court should accept all factual allegations in the Complaint as true and construe them in the light most favorable to the plaintiff. *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008). Further, the court should favor the plaintiff with all reasonable inferences from the allegations in the complaint. *Stephens v. Dep't of Health & Human Servs.*, 901 F.2d 1571, 1573 (11th Cir. 1990).

The legal standard controlling insurance contract interpretation cases, such as this one, is whether the insured's interpretation of the contract is "reasonable." *See, e.g.*, *Auto-Owners Ins. Co. v. Anderson*, 756 So.2d 29, 34 (Fla. 2000) ("If the relevant policy language is susceptible tomore than one reasonable interpretation, one providing coverage and another limiting coverage, the insurance policy is considered ambiguous" and must be "interpreted liberally in favor of the insured and strictly against the drafter who prepared the policy").

### IV.     ARGUMENT

#### a.  Plaintiffs Have Stated a Valid Claim for Breach of Contract

A breach of contract claim must allege: (1) a valid contract; (2) a material breach; and (3) damages. *See Border Collie Rescue, Inc. v. Ryan*, 418 F. Supp. 2d 1330, 1342 (M.D. Fla. 2006) (*citing Abruzzo v. Haller*, 603 So. 2d 1338, 1340 (Fla. 1st DCA 1992)). Breach of contract is properly alleged where plaintiff alleges the existence of a contract between the parties, the specific provisions of the contract that were breached, and that such breaches caused damages. *Textiles Morales, S.A. de C.V. v. Green Paradigm Partners, LLC.*, 2011 U.S. Dist. LEXIS 78218, at *2, 2011 WL 2881666 (M.D. Fla. July 19, 2011).

Defendants' liability is capped at the ACV of the insured property – because this case involves a total loss, ACV is the relevant policy provision. Plaintiffs indisputably alleged a valid contract (which Defendants do not dispute), the specific provisions that were breached, and that such breaches caused damages of at least $79.85. Defendants dispute neither the validity of the contract, nor that, if Plaintiffs' interpretation is correct, the amount in damages. Defendants merely claim that ACV does not include title or registration transfer fees as a matter of law. Motion at 7 ("Defendants did not, as a matter of law, breach any term of the Policies by not paying title and license plate transfer fees here because they are not obligated to do so under the Policies."). Defendants are incorrect. It is well-established in Florida that ACV is an unambiguous term, calculated as "replacement costs minus depreciation." Title and registration fees are not merely reasonably likely to be incurred – they are necessarily and unavoidably incurred in replacing a total-loss vehicle. At minimum, whether a cost is "reasonably likely" to be incurred is a question of fact. Either way, Plaintiffs' claims are not subject to dismissal at this stage of the pleadings.

i. Actual Cash Value Includes Costs Reasonably Likely to be Incurred

Defendants' Policy promises, in the context of a total loss, to either replace the vehicle to pay the amount necessary to do so in money. Motion at 5 ("Payment for Loss"). Standing alone,

that raises the question: "replace with what?" Hopefully a brand new vehicle; maybe a Ferrari. Alas, that is not the case. Instead, Defendants' liability is capped at the "actual cash value" of the total-loss vehicle at the time of loss. *Id.* ("Limit of Liability"). Defendants concede that ACV is not defined in the Policy. *Id.* at 6 ("The Policies do not define 'actual cash value'").

Fortunately, even when undefined, ACV is an unambiguous term in Florida, synonymous with "market value" measured as "replacement costs" minus depreciation. *Goff v. State Farm Fla. Ins. Co.*, 999 So. 2d 684, 689 (Fla. 5th DCA 2008) ("The policy leaves the term [ACV] undefined, but the lack of definition poses no insoluble problem.") (*citing Am. Reliance Ins. Co. v. Perez*, 689 So. 2d 290, 291 (Fla. 3d DCA 1997) (find that undefined ACV "is not ambiguous", but rather unambiguously means "market value" measured as "consideration of cost minus depreciation.")); *Trinidad v. Fla. Peninsula Ins. Co.*, 121 So. 3d 433, 438 (Fla. 2013) (holding that undefined ACV means "fair market value" or "[r]eplacement cost minus normal depreciation," and includes costs "the insured is reasonably likely to incur."); *Sos v. State Farm Mut. Auto. Ins. Co.*, 2019 U.S. Dist. LEXIS 139679, at *9-11 (M.D. Fla. Mar. 13, 2019) (finding undefined ACV to unambiguously mean replacement costs minus depreciation, and declining to consider extrinsic evidence because the term was ambiguous). Thus, rather than promising a brand new Ferrari, Defendants' liability is capped at the cost to replace the vehicle, minus depreciation – in other words, a vehicle of the same year, make, model, mileage, condition etc.

The costs to replace, however, is not a subjective term; Defendants do not owe more money to an insured merely because that insured is bad at negotiating, or wants vanity license plates, or has ten kids for whom they need a babysitter in order to replace the vehicle, or anything else that may or may not impact the amount it *subjectively cost the insured* to replace the vehicle. Instead, Florida law is clear that the costs to replace are those that are "reasonably likely to be incurred" –

a predictable and objective amount on which both the insured and insurer can rely *when agreeing to the contract* and thus able to have a proper meeting of the minds. *See, e.g., Sos*, at *11 (the "components [] included in the replacement cost" of a vehicle are those "the insured reasonably likely to incur when replacing his vehicle."); *Trinidad*, 121 So. 3d at 438 (ACV includes costs "the insured is reasonably likely to incur."); *Mills v. Foremost Ins. Co.*, 511 F.3d 1300, 1305-06 (11th Cir. 2008) (ACV includes costs if they are reasonably likely to be incurred); *Bastian v. United Servs. Auto. Ass'n*, 150 F. Supp. 3d 1284, 1290 (M.D. Fla. 2015) (holding that sales tax is included in ACV because "the Court agrees with the Eleventh Circuit's easily-reached conclusion [in *Mills*] that state and local taxes are part of the cost of replacing an item."); *Goff*, 999 So. 2d at 689 (ACV includes costs reasonably likely to be necessary)

  ii. <u>Title and Registration Transfer Fees Are Reasonably Like to be Incurred</u>

Because it is unambiguously the case in Florida that ACV includes costs reasonably likely to be incurred, the next question is merely whether title and registration transfer fees are reasonably likely to be incurred in replacing a vehicle. As Judge Byron held very recently, the short answer is "yes." *Jones v. Gov't Emples. Ins. Co.*, 2019 U.S. Dist. LEXIS 120353, at *9-10 (M.D. Fla. Jul. 19, 2019) ("The Court next turns to the question whether license plate transfer fees are included in ACV. The short answer: yes.").

In Florida, a vehicle cannot be purchased or otherwise acquired by any method (it is not merely illegal to operate) without paying title fees. Florida Statute § 319.21(3) provides that "[n]o person shall purchase or otherwise acquire . . . a motor vehicle . . . unless such person obtains a certificate of title for it in his or her name in accordance with the provisions of this chapter." Fla. Stat. § 319.21(3). Section § 319.22 also provides that a person does not have marketable title, does not own a vehicle, and does not have ***any*** "right, title, claim, or interest" to a vehicle under Florida

law – unless title is transferred to the person's name. Fla. Stat. § 319.22; *see also* Fla. Stat. § 319.34 (providing that a vehicle cannot be operated without proper title issued). Moreover, as Judge Byron pointed out, it is illegal to operate a vehicle in Florida without registering it, for which a minimum fee of $4.10 is imposed. *Jones*, at *10 ("Florida law requires that every car driven on roads in the state be registered in Florida. Fla. Stat. §§ 320.02(1), 320.0605" for which a minimum fee of $4.10 is imposed). Clearly, then, title and registration transfer fees are not merely reasonably likely – they are mandatory and unavoidable, under penalty of serving time in jail.

Courts overwhelmingly agree. *See, e.g.*, *Jones, supra*; *Roth v. GEICO Gen. Ins. Co.*, 2018 U.S. Dist. LEXIS 226554, at *9 (S.D. Fla. Jun. 13, 2018) ("Plaintiff asserts that…title transfer fees are mandatory, necessarily included in the replacement costs of a total loss vehicle, and therefore are components of actual cash value under the Policy. The Court agrees. Sales tax and title transfer fees are mandatory fees imposed by Florida law on the replacement of all vehicles."; *Sos*, at *12 ("The Court finds that…[title transfer] fees are costs an insurer is reasonably likely to incur in replacing his leased vehicle, and therefore are components of actual cash value under the Policy."); *Rubi v. United Automobile Insurance Co.*, 2017-029171-CA-01, Circuit Court of the Eleventh Judicial Circuit in and for Miami-Dade County, Florida (Smith, J.) (denying insurer defendant's motion to dismiss on claims alleging the insurer breached an "actual cash value" auto insurance policy by failing to pay sales tax and title fees); *Giordani v. Ascendant Commercial Ins. Co.*, Case No. 2018-CA-1024-0 (Fla. 9th Jud. Cir. 2018 (denying insurer's motion for summary judgment that the Policy should be interpreted to exclude title and registration transfer fees); *see also*, *Bastian*, 150 F. Supp. 3d at 1291 (noting inconsistency of the fact that USAA paid title fees but not sales tax, since title fees and sales tax are both part of the replacement costs of a vehicle).

Defendants arguments to the contrary are unpersuasive. First, Defendants argue that because the Policy specifically mentions payment of sales tax, it by implication *excludes* coverage for title and registration transfer fees. Motion at 8. Not so.[3] First, clauses purporting to exclude components of payment must be explicit, not implied. *See, e.g.*, *Cochran v. State Farm Mut. Auto. Ins. Co.*, 298 So. 2d 173, 174 (Fla. 4th DCA 1974); *Progressive Ins. Co. v. Estate of Wesley*, 702 So. 2d 513, 515 (Fla. 2d DCA 1997); *Pine Island Shopping v. Westchester Surplus Lines Ins. Co.*, 2016 U.S. Dist. LEXIS 188960, at *10 (S.D. Fla. Sep. 22, 2016). Defendants' entire premise is that it implicitly limited coverage to not include title and registration fees – as a matter of law, however, any suggestion that coverage is *implicitly* limited or excluded must fail.

As seen above, Defendants' promise to pay the ACV of the insured vehicle included costs reasonably likely to be incurred. Defendants' claim that by mentioning sales tax in the Policy, it was excluding title and registration fees. But if Defendants intended to exclude title and registration fees from ACV as costs reasonably likely to be incurred, they should have done so clearly. At best, mentioning sales tax could only introduce an ambiguity into the contract, and, of course, ambiguities must be construed in favor of insureds. *Dickson v. Econ. Premier Assur. Co.*, 36 So. 3d 789, 790 (Fla. 5th DCA 2010) ("Ambiguous policy provisions . . . should be construed

---

[3] Defendants' argument based on the principle of *expressio unius est exclusio alterius* proves too much. Defendants are required to pay other costs when paying for loss in money. For instance, in partial losses, Defendants' obligation to pay the "costs of repair" would include not just the cost of new parts, but the costs of labor to put on the new parts. By specifically promising sales tax on the new part, are Defendant excluding the costs of labor under the canon of *expressio unius est exclusio alterius*? A replacement (but used) part might need to be painted to be the same color as the vehicle – by specifying they will pay the sales tax on the replacement part, are Defendants also excluding the cost to subsequently paint the replacement part? In the context of a total-loss, a comparable vehicle might be in worse condition than the insured vehicle – are Defendants excluding payment for the condition adjustment? By mentioning sales tax, were Defendants excluding payment for diminution in value; if so, why did Defendants elsewhere explicitly exclude diminution in value, given that it was already excluded by the mention of sales tax? Policy at 7.

liberally in favor of coverage of the insured and strictly against the insurer."); *Stuyvesant Ins. Co. v. Butler*, 314 So. 2d 567, 570 (Fla. 1975) (insurance policies "should be construed so as to give effect to the intent of the parties and if uncertainty is present in a policy, it should be construed against the insurer and in favor of the insured.").

Next, Defendants ask this Court to adopt the reasoning of the court in one Florida circuit court rather than two cases from the Middle District, another case from the Southern District, several other circuit courts in Florida, and the direct application of overwhelming and well-established Florida law on ACV and what is meant by "replacement costs." Motion at 9 (*citing Schenck v. Windhaven Insurance Company*, No. 16-2018-CA-000023, at 5–6 (Fla. 4th Cir. Ct. May 17, 2019)). Respectfully, the *Schneck* decision, which is subject to a motion for reconsideration for which a hearing is set in September, is not persuasive – the court held that a vehicle "can be replaced" without payment of fees, even if it cannot "be legally operated." *Id.* at pgs. 5-6.[4] The Court appears to be referring to Fla. Stat. § 319.34, which asserts that vehicle cannot be operated without proper title issued (for which the fee is imposed). But the court ignored Fla. Stat. §§ 319.21 and 319.22, which mandate that mandate that "[n]o person shall purchase or otherwise acquire . . . a motor vehicle . . . unless such person obtains a certificate of title for it in his or her name in accordance with the provisions of this chapter." Fla. Stat. § 319.21(3).[5]  The title fees necessary for obtaining a certificate of title are just like sales tax: they *must* be paid on

---

[4] Among its other problems, the *Schenck* Order is also contrary to law because whether property theoretically "can be replaced" absent certain costs is not the standard – "reasonably likely" is the standard. And whether a cost is "reasonably like" is, at minimum, a question of fact inappropriate for resolution on a Rule 12 Motion to Dismiss.

[5] The exceptions in Fla. Stat. § 319.21 relating to Fla. Stat. § 319.28 and temporary use do not apply to the replacement of total loss vehicles.  The exception in Fla. Stat. § 319.28 applies only to a surviving spouse who seeks to dispose of an inherited vehicle rather than retain it. Fla. Stat. § 319.28(1)(c).

any purchase or any acquisition.  Moreover, Fla. Stat. § 319.22 provides that a person does not have "marketable title," does not own a vehicle, and does not have **any** "right, title, claim, or interest" to a vehicle under Florida law, unless title is transferred to the person's name:

> (1) Except as provided in ss. 319.21 and 319.28, **a person acquiring a motor vehicle** or mobile home from the owner thereof, whether or not the owner is a licensed dealer, **shall not acquire marketable title to the motor vehicle** or mobile home **until he or she has had issued to him or her a <u>certificate of title</u>** to the motor vehicle or mobile home; nor shall any waiver or estoppel operate in favor of such person against a person having possession of such certificate of title or an assignment of such certificate for such motor vehicle or mobile home for a valuable consideration. Except as otherwise provided herein, **no court shall recognize the right, title, claim, or interest of any person in or to any motor vehicle** or mobile home  sold,  disposed  of,  mortgaged,  or  encumbered, **<u>unless</u> evidenced  by  a <u>certificate of title</u>** duly issued to that person, in accordance with the provisions of this chapter.

Fla. Stat. § 319.22(1) (emphasis added).[6]

Accordingly, in Florida, a vehicle cannot be replaced at all (even setting aside whether it may be legally operated) without payment of title fees. The title transfer fee when purchasing a replacement vehicle is a minimum of $75.25, which every insured who purchases a replacement vehicle in Florida pays.

Finally, Defendants point out that a late fee is only "$20, in addition to all other fees and penalties…". Motion at 13. The import of this is unclear, given that presumably the "other fees and penalties" mentioned here include the fact that anyone who violates Fla. Stat. §§ 319.21 and 319.22 is subject to six months in jail along with a $500 fine. Fla. Stat. § 319.34. The standard is

---

[6] The exceptions referenced in Fla. Stat. § 319.22 relating to § 319.21 and § 319.28 do not apply to an insured's total loss replacement.  Section 319.21 requires that anyone purchasing or acquiring a motor vehicle obtain title in the purchaser's or acquirer's name and contains an exception to title issuance that is applicable only to licensed auto dealers who purchase vehicles for resale, *not* an insured's  total  loss  replacement.   Fla. Stat. § 319.28  contains  an  exception  to  title  issuance applicable only to persons who inherit a vehicle and wish to dispose of the vehicle *rather than* retain for their own use.

not whether an insured can theoretically replace a vehicle without paying such costs and instead pay an even more substantial fine and spend time in jail. The question is whether such costs are "reasonably likely" to be incurred. *Contra* Defendants' assertions, Plaintiffs are not seeking to re-write or expand the Policy; Plaintiffs seek only to enforce Defendants' promise to pay the replacement costs minus depreciation of their insured vehicles, the precise thing promised by the Policy at issue.

### iii.   At Minimum, the Question is a Factual Question Not Subject to Dismissal

There is no question, and Defendants do not appear to dispute, that, as set forth above, Florida law is clear that ACV is an unambiguous term and means "replacement costs minus depreciation." Plaintiffs submit and believe they would show at summary judgment that no reasonably factfinder could find that title and registration fees are unlikely to be incurred. But at the very least, whether a given cost is "reasonably likely to be incurred" is a question of fact and cannot be resolved at this stage of the pleadings. *Trinidad*, 121 So. 3d at 433 (remanding to trial court for determination of whether certain costs were reasonably likely to be incurred); *Mills v. Foremost Ins. Co.*, 269 F.R.D. 663, 681 (whether general contractor overhead and profit is reasonably likely to be needed is a question of fact for a jury); *Prepared Ins. Co. v. Gal*, 209 So. 3d 14, 17 (Fla. 4th DCA 2016) (same).

Thus, even if Defendants were correct that a vehicle *could* be replaced without paying transfer fees, that would not render Plaintiffs' claim subject to dismissal. Instead, Plaintiffs have alleged that title and registration transfer fees are reasonably likely to be incurred, which is a factual allegation that must be taken as true at this stage in the litigation. *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008). Plaintiffs believe they will show through a variety of evidence that the costs are necessary and unavoidable, to say nothing of "reasonably likely", such

that no reasonable factfinder could find otherwise, but in any event the claims certainly are not subject to dismissal through a Rule 12 motion to dismiss.

### b. Plaintiffs Claims Are Not Moot

Of course, Defendants' entire argument concerning failure to state a claim is somewhat ironic, given that Defendants immediately pivot towards assertions that they have corrected their mistake, changed their business practice, and remediated Plaintiffs and all putative class members. Motion at 17-21. If that turns out to be the case, Plaintiffs commend Defendants. However, Defendants are incorrect in arguing that such assertions, even assuming they are true, render Plaintiffs' claims moot. Plaintiffs filed their Complaint on June 6th, and Defendants assert they informed Plaintiffs of a forthcoming payment on June 19th and June 25th.[7] Motion at Exhibit B, ¶ 9.

The Florida Supreme Court has made perfectly clear the law on confession of judgment in the context of claims alleging breach of an insurance policy. "In *Wollard*, we held that where an insurer pays policy proceeds after suit has been filed but before judgment has been rendered, the payment of the claim constitutes the functional equivalent of a confession of judgment or verdict in favor of the insured[.]" *Ivey v. Allstate Ins. Co.*, 774 So. 2d 679, 684-85 (Fla. 2000) (citing *Wollard v. Lloyd's and Companies of Lloyd's*, 439 So. 2d 217, 218 (Fla. 1983)). Florida law is equally clear where an insurer confesses judgment through voluntary payment of the alleged damages, courts should "enter[] the confessed judgment [while] reserving jurisdiction to award

---

[7] Defendants offer bare assertions that the decision to remediate the underpaid insureds was made in "April 2019" and that a file review began on June 6th, coincidentally the same day Plaintiffs filed their Complaints. A part of testing the accuracy of the declaration and whether full payment has been made for the full damages to which insureds are entitled would no doubt include determining the genesis of the decision and whether Defendants intend to continue including transfer fees in making ACV payments going forward.

costs, prejudgment interest, and, if authorized by law, reasonable attorney's fees. *GEICO Cas. Co. v. Barber*, 147 So. 3d 109, 112 (Fla. 5th DCA 2014) (citations omitted). In fact, courts specifically reject the notion that payment of the amount at issue divests the court of jurisdiction. *Tampa Chiropractic Ctr., Inc. v. State Farm Mut. Auto. Ins. Co.*, 141 So. 3d 1256 (Fla. 5th DCA 2014).

Moreover, a confession of judgment entitles the insured to an award of attorney's fees and costs. Fla. Stat. § 627.428. The 11th Circuit has held that such award is part of the *merits* of the claim, not a collateral matter, and must be part of any final judgment. *Certain British Underwriters at Lloyds of London v. Jet Charter Service, Inc.*, 739 F.2d 534, 536 (11th Cir. 1984).[8] For that reason, Plaintiffs' individual claims cannot possibly be moot, because to determine that a claim is moot "means that the defendant is entitled to a dismissal as a matter of right." *United States v. W. T. Grant Co.*, 345 U.S. 629, 632 (1953). Under no scenario are Defendants entitled to dismissal; if anything, Plaintiffs are entitled to judgment, which would not even be final judgment until the issue of attorneys' fees and costs under Fla. Stat. § 627.428 is decided.[9]

Even if the claims were moot, of course, the case would remain live. As set forth above, the claims are clearly not moot. Having said that, the 11th Circuit directly addressed this precise question, and held that even a mooted claim does not preclude class treatment. *Jeffrey M. Stein, D.D.S., M.S.D., P.A. v. Buccaneers L.P.*, 772 F.3d 698, 704 (11th Cir. 2014) ("Even if the

---

[8] This is different than Florida state courts, where a judgment can be entered while retaining jurisdiction to determine fees and costs under 627.428 as a collateral matter. Thus, while the fact that attorney's fees are an element of damages and part of the merits of the claim is substantive law (and thus state law governs), the question of whether a judgment is final absent the award of attorney's fees is procedural, and thus federal law governs.

[9] Defendants assert that Plaintiffs should have given Defendants a quick phone call prior to filing suit rather than instituting a "race to the courthouse," which is a bit strange given that Plaintiffs' accidents and the breach of contracts occurred approximately seven and 13 months prior to time Plaintiffs filed suit. Compl. at ¶¶ 24, 31. If filing suit 13 months after the cause of action accrues constitutes a "race," it was not a very exciting one.

individual claims are somehow deemed moot, the class claims remain live, and the named plaintiffs retain the ability to pursue them.") (*citing Zeidman v. J. Ray McDermott & Co.*, 651 F.2d 1030 (5th Cir. 1981)). The Court's justification was based at least in part on *Roper*, in which the Supreme Court held that even the *entry of judgment* did not moot the case entirely, given that the putative named plaintiffs retained an economic interest in the case. *Deposit Guar. Nat'l Bank v. Roper*, 445 U.S. 326, 340 (1980).[10]

To be clear, Plaintiffs make the foregoing points only to point out that the claims are not moot nor subject to dismissal. Plaintiffs are not interested in litigation for litigation's sake, nor in crowding this court's docket with unnecessary filings and briefings merely to elicit attorney's fees or whatever else Defendants might be implying. If Defendants asserts turn out to be correct, Plaintiffs will be happy that the Parties' goals are the same and that the putative class members would have received the monies rightfully theirs. If so, there is no reason why the Parties cannot bring this litigation to efficient and expeditious resolution without the need for judicial determination of the claim. But in any event, Plaintiffs' claims are clearly not subject to dismissal, either for failure to state a claim or mootness.

---

[10] Defendants case law is inapposite and does not contradict established 11th Circuit precedent. In *Harrison v. United Mine Workers 1974 Ben. Plan & Trust*, the 11th Circuit simply affirmed the noncontroversial principle that ERISA lawsuits first require exhaustion of administrative remedies. 941 F.2d 1190 (11th Cir. 1991). To do so required submitting applications for reimbursement – those class members who did so were paid, and those who had not failed to exhaust their administrative remedies. The case is simply irrelevant to the present action. Similarly, *Peer v. Liberty Life Assurance Co.*, No. 9:17-CV-80281, 2018 WL 707752, at *3 (S.D. Fla. Feb. 5, 2018), *aff'd*, 758 Fed. App'x 882 (11th Cir. 2019), was an ERISA action brought under federal law and thus is clearly distinguishable from Fla. Stat. § 627.428, which entitles Plaintiffs to judgment in their favor, not dismissal under Rule 12.

## V.   **CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully submit that Defendants' Motion should be denied, except that Plaintiffs do not contest dismissal of entities other than Travelers Indemnity Company of Connecticut and Standard Fire Insurance Company.

**Dated:** August 29, 2019                       Respectfully submitted,

**NORMAND PLLC**

*/s/ Jake Phillips*
Jacob L. Phillips
FBN: 120130
Edmund A. Normand
FBN: 865590
3165 McCrory Place, Ste. 175
Orlando, FL 32803
Tel: 407.603.6031
jacob.phillips@normandpllc.com
ed@ednormand.com
service@normandpllc.com

**CHRISTOHER J. LYNCH, P.A.**
Christopher J. Lynch
FBN: 331041
6915 Red Road, Suite 208
Coral Gables, FL 33143
Tel: 312.967.3653
clynch@hunterlynchlaw.com
lmartinez@hunterlynchlaw.com

**SHAMIS & GENTILE**
Andrew J. Shamis, Esq.
FBN: 101754
ashamis@shamisgentile.com
14 NE 1st Avenue, Suite 1205
Miami, FL, 33132
305.479.2299

**EDELSBERG LAW, P.A.**
Scott Edelsberg, Esq.
FBN: 0100537
scott@edelsberglaw.com
19495 Biscayne Blvd #607
Aventura, FL, 33180

*Counsel for Plaintiffs*

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on August 29th, 2019, I electronically filed the foregoing with the

Clerk of the Court by using the CM/ECF system, which will send a Notice of Electronic Filing to

all parties on the attached Service List.

<u>*/s/ Jacob L. Phillips*</u>
Jacob L. Phillips
FBN: 120130

**<u>SERVICE LIST</u>**

**BAKER, DONELSON, BEARMAN,
CALDWELL & BERKOWITZ, PC**
SunTrust Center
200 South Orange Avenue, Suite 2900
Orlando, FL 32801
Phone: 407-422-6600
Fax: 407-841-0325
Hal K. Litchford, Esquire
Florida Bar No. 272485
hlitchford@bakerdonelson.com
rgustafson@bakerdonelson.com
fedcts@bakerdonelson.com
Kyle A. Diamantas, Esquire
Florida Bar No. 106916
kdiamantas@bakerdonelson.com
sdenny@bakerdonelson.com

***Counsel for Defendants***